UNITED STATES, Appellee,

v.

Ricky M. JOHNSON, Specialist,
U.S. Army, Appellant.

No. 99–0092.
Crim.App. No. 9601024.

U.S. Court of Appeals for
the Armed Forces.

Argued March 2, 2000.

Decided Aug. 31, 2000.

CRAWFORD, C.J., delivered the opinion of the Court, in which EFFRON, J., and COX, S.J., joined. SULLIVAN and GIERKE, JJ., each filed an opinion concurring in the result.

For Appellant: *Major Jonathan F. Potter* (argued); *Colonel Adele H. Odegard, Major Scott R. Morris, Major Kirsten V.C. Brunson,* and *Captain Donald P. Chisholm* (on brief).

For Appellee: *Captain Kelly D. Haywood* (argued); *Colonel Russell S. Estey* and *Lieutenant Colonel Eugene R. Milhizer* (on brief).

Chief Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, appellant was convicted by officer and enlisted members of 2 specifications of battery—one by biting and the other by striking a child—and 3 specifications of aggravated assault upon a child by intentionally inflicting grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. Appellant was sentenced to a bad-conduct discharge, 6 years' confinement, total forfeitures, and reduction to the lowest enlisted grade.

Upon initial review, the Court of Criminal Appeals affirmed the findings of guilty and the sentence without opinion. On remand by this Court, 52 MJ 374 (1999), the Court of Criminal Appeals determined that appellant was entitled to relief under *United States v.*

*Gorski,* 47 MJ 370 (1997). This Court had noted in the remand order that it was remanding the case "without prejudice to raising other issues in a petition after remand." On December 9, 1999, this Court granted the petition for review on the following issue:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN DENYING THE DEFENSE MOTION TO STRIKE TESTIMONY OF APPELLANT'S WIFE AT THE ARTICLE 32 PRETRIAL INVESTIGATION, WHERE THE WIFE'S APPEARANCE AT THE INVESTIGATION WAS PROCURED BY AN ILLEGAL SUBPOENA AND APPELLANT WAS DENIED HIS RIGHT TO A PROPERLY CONDUCTED PRETRIAL INVESTIGATION.

Finding that appellant lacks standing to object to the subpoena, we affirm.

## FACTS

On February 26, 1996, trial counsel in the case at bar obtained a "subpoena" from German authorities commanding Mrs. Tashonda Johnson, wife of appellant, to appear at an Article 32, UCMJ, 10 USC § 832, hearing on March 1, 1996. The document issued by German authorities was styled a "Subpoena for Article 32 Hearing." The cover letter to Mrs. Johnson from German authorities states, "You are obliged [sic] to appear on the strength of the subpoena. Should you fail to appear, you may become liable to afine [sic] up to DM 1.000 or confinement up to six (6) weeks."

On March 5, 1996, the investigating officer notified appellant by written memorandum addressed to appellant's civilian defense counsel that he intended to call Mrs. Johnson as a witness at the Article 32 hearing. Appellant did not move to quash the subpoena or object to Mrs. Johnson's testimony at the Article 32 hearing or to the convening authority. Mrs. Johnson was called by the investigating officer to testify, was sworn as a witness, and proceeded without objection to testify and be cross-examined.

At trial, however, the defense did move to exclude all testimony given by Mrs. Johnson at the Article 32 hearing, for a new Article 32 investigation, and to prohibit the Government from using the testimony of Mrs. Johnson at trial.

The military judge found as a matter of law that the subpoena was unlawful and issued without authority. However, he declined to exclude the testimony of Mrs. Johnson. Instead, he treated her testimony as a "deposition" under RCM 702, Manual for Courts–Martial, United States (1998 ed.). He found that appellant did not suffer any prejudice from having a witness illegally produced at the Article 32 hearing.

Mrs. Johnson was the principal government witness against appellant. She testified that she told agents of the Criminal Investigation Command (CID) she had seen appellant hit their daughter 2 times; that appellant held their 8–month–old daughter upside down just by either her arms or legs; appellant "usually just drops her in the crib"; and that she saw appellant bite their daughter's feet hard enough to make their daughter cry. Trial counsel effectively used Mrs. Johnson's Article 32 testimony during his direct examination.

Appellant argues that the military judge properly ruled that the prosecution had no authority to issue a subpoena to secure the attendance of appellant's wife, Mrs. Johnson, at the Article 32 hearing, but that he erred by not striking Mrs. Johnson's Article 32 testimony. Appellant submits that no prejudice need be shown from the military judge's ruling; however, if prejudice must be established, appellant was clearly prejudiced by the illegal compulsory attendance of Mrs. Johnson at the Article 32 hearing.

The Government argues that it was within the military judge's discretion to consider the prior testimony a deposition and allow trial counsel to impeach his own witness with prior inconsistent statements. The Government also argues that even if the testimony was obtained as a result of an unlawful subpoena, appellant was afforded his rights of cross-examination and compulsory process at the Article 32 investigation. *United States v. Bramel,* 29 MJ 958 (ACMR), *aff'd,* 32 MJ 3 (CMA 1990).

## DISCUSSION

■ The military judge was correct in ruling that an illegally ordered "subpoena" was issued to secure the attendance of appellant's wife, Mrs. Johnson, as a witness at the Article 32 hearing. He was also correct in finding that there was no prejudice to appellant's substantial rights by the improper production of this witness at the Article 32 hearing. We hold that appellant did not have standing to object to the use of the Article 32 testimony at trial because the evidence presented against him was reliable.

■ We first note that the Supreme Court and other federal courts have permitted third parties to move to quash grand jury subpoenas directed to another person where a litigant has sufficiently important, legally-cognizable interests in the materials or testimony sought to give the litigant standing to challenge the validity of that subpoena. *See, e.g., Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972)(U.S. Senator asserting constitutional privilege allowed to intervene and move to quash subpoena directed at his assistant). We see no reason why a third-party challenge either to a *subpoena duces tecum* or a *subpoena ad testificandum* could not be raised during an Article 32 investigation if a sufficient basis were provided to establish standing.

Appellant did, however, properly challenge the Article 32 investigation prior to trial by a Motion for Appropriate Relief in accordance with the provisions of RCM 906(b)(3). Therefore, we must test to see whether appellant has standing to object. We have previously found standing to object

> when the actions of the Government impact upon the reliability of the evidence presented against him at trial, *e.g.*, coerced confessions, unlawful command influence, interference with the rights of confrontation or cross-examination, and interference with the right to present evidence.

*United States v. Jones*, 52 MJ 60, 64 (1999).

This is not a case of first impression. In *United States v. Smelley*, 33 CMR 516 (ABR 1963), command influence was alleged based on an authorization given by the convening authority to take depositions in order to perfect an Article 32 investigation. The *Smelley* board of review looked at the question "whether such defect in an Article 32 investigation is prejudicial or violative of any substantial right of the accused as to vitiate the pretrial investigation and require a reversal of the trial proceedings." 33 CMR at 524. The board noted:

> Paragraph 34a of the *Manual* [United States, 1951], provides that any failure to comply substantially with the requirements of Article 32 which results in prejudice to the substantial rights of the accused at the trial—such as a denial of a reasonable opportunity to secure material witnesses for use at the trial or of an opportunity to prepare his defense—may result in a miscarriage of justice and disapproval of the proceedings. In paragraph 69c, it is further provided that a substantial failure to comply with the requirements of Article 32 and paragraph 34 of the Manual may· be brought to the attention of the court by a motion for appropriate relief but that such motion should be sustained only if the accused shows that the defect in the conduct of the investigation has in fact prevented him from properly preparing for trial or has otherwise injuriously affected his substantial right.

> In essence, the particular prejudice which appellant claims to have suffered as a result of the alleged unlawful use of depositions and subpoena in the pretrial investigation is that by virtue of such facility, otherwise competent and admissible evidence was made available to support the charges against him and thus permitted their referral to trial by general court-martial. Counsel for appellant, however, does not cite any legal authority for the proposition that a defect in a pretrial investigation which erroneously permits material evidence to be adduced against an accused constitutes a violation of a substantial right. We are not aware of any such legal authority nor do we consider that such defect could reasonably or justly be construed to be a violation of his substantial right.

In our opinion, even if it were conceded that subpoena process had been used without lawful authority to compel reluctant civilian witnesses to give depositions such error singularly operates only against the interests of the witnesses and it is only they who are intended to be benefited by the law governing the issuance of subpoena and who can take exception to a lack of compliance therewith.

In any event there is no showing in the record or in the pretrial hearing that the defect complained of in the conduct of the investigation has in fact prevented the defense from preparing for trial or has otherwise affected accused's substantial rights. . . .

33 CMR at 524.

The analysis of the *Smelley* court is sound, even though the law has changed slightly. Paragraphs 34*a* or 69*c* of the 1951 Manual no longer exist, but the Discussion to RCM 405(a), Manual, *supra* (1998 ed.) similarly provides:

> Failure to comply substantially with the requirements of Article 32, which failure prejudices the accused, may result in delay in disposition of the case or disapproval of the proceedings.

The Discussion then cites "RCM 905(b)(1) and 906(b)(3) concerning motions for appropriate relief relating to the pretrial investigation." RCM 906(a) provides:

> A motion for appropriate relief is a request for a ruling to cure a defect which deprives a party of a right or hinders a party from preparing for trial or presenting its case.

Appellant was neither deprived of a right nor hindered in presenting his case. This is not an instance where an accused's right to produce a witness at an Article 32 investigation or to confront a witness has been interfered with. Quite the contrary. Appellant and counsel attended the Article 32 proceedings and the witness testified, without objection, and was subject to cross-examination. Appellant's trial preparation was not impeded. Rather, he had full notice of the witnesses against him and an opportunity to confront those witnesses prior to trial. Under these circumstances, there is no authority supporting an accused's right to suppress competent and material evidence against him.

We conclude that the evidence at issue, Mrs. Johnson's testimony, was reliable, *i.e.*, not the result of "coerced confessions, unlawful command influence, interference with the rights of confrontation or cross-examination," or "the right to present evidence". *See Jones*, 52 MJ at 64. Therefore, we hold that appellant had no standing to object. Since appellant does not have standing to object, we do not reach the question whether the testimony was admissible as a "deposition" under RCM 702.*

The decision of the United States Army Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (concurring in the result):

There is no exclusionary rule at trial for the testimony of a witness who was unlawfully subpoenaed for an earlier Article 32 hearing. Moreover, there is no *per se* reversal rule for a court-martial preceded by an Article 32 hearing where legal error occurred. Instead, in the context of a failure to provide an accused with qualified counsel at an Article 32 hearing, this Court has stated the following:

> A defect in the preliminary proceeding will not justify setting aside a conviction unless it clearly appears that the error prejudiced the accused in some .material respect at the trial. . . . Once the case comes to trial on the merits, the pretrial proceedings are superseded by the procedures at the trial; the rights accorded to the accused in the pretrial stage merge into his rights at trial. If there is . . . no indication that these proceedings adversely affected the accused's rights at the trial, there is no good reason in law or logic to set aside his conviction.

*United States v. Mickel,* 9 USCMA 324, 326, 327, 26 CMR 104, 106, 107 (1958). Thus, this Court looks to the effect of a pretrial error

---

* Likewise, we need not reach the issue whether the testimony might have been admitted under Mil.R.Evid. 801(d)(1) or 804(b)(1), Manual for Courts–Martial, United States (1998 ed.).

on the trial, rather than the lawfulness of the Article 32 inquiry, in determining whether reversible error occurred. Here, I can discern no material prejudice to appellant's trial rights as a result of this pretrial error.

Appellant's wife was properly subpoenaed for trial. Defense counsel cross-examined her at trial and used her Article 32 testimony to impeach her credibility. A military police investigator also interviewed appellant's wife two times besides the illegal Article 32 appearance; he testified at trial that during these interviews, appellant's wife said appellant hit the victim in the eye on two occasions. R. 230–31. There was nothing in appellant's wife's Article 32 testimony used to impeach her that also was not contained in these other two sworn statements. There also was ample physical evidence on which to convict appellant of the crimes for which he was charged, i.e., the Government's case did not solely consist of appellant's wife's testimony, let alone her Article 32 testimony. Finally, appellant received the benefit of the military judge's instruction that emphasized the illegality of the subpoena.

Under all of these circumstances, I would dispose of this case on the bases that there is no exclusionary rule for evidence obtained from a witness unlawfully subpoenaed for an Article 32 hearing and that in any event appellant suffered no prejudice from the unlawful pretrial subpoena.*

---

* Under English common law, there was no absolute exclusionary rule for unlawfully obtained evidence; and, much of the case law has centered around the breadth of the trial judge's discretion to admit or exclude evidence and the circumstances affecting this decision. See, e.g., Kuruma, Son of Kaniu v. R. [1955] A.C. 197, 203 (P.C.) (Kenya) (affirming lower court's ruling that evidence obtained by means of an unauthorized search was admissible on ground that "the test to be applied in considering whether evidence is admissible is whether it is relevant to the matters in issue. If it is, it is admissible and the court is not concerned with how the evidence was obtained") (Lord Goddard, C.J.), citing, inter alia, Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928); Jeffrey v. Black [1978] Q.B. 490, 497–98 (D.C.) (finding that lower court erred in excluding evidence obtained by unauthorized and nonconsensual police search on ground that test for admissible evidence is whether it was relevant and not whether it was properly obtained; trial judge may exercise discretion to exclude evidence obtained by trickery or other oppressive, unfair, or morally reprehensible means, but such circumstances are very exceptional) (Lord Widgery, C.J.); R. v. Sang [1980] A.C. 402, 437 ("Save with regard to admissions and confessions and generally with regard to evidence obtained from the accused after commission of the offence, [a trial judge] has no discretion to refuse to admit relevant admissible evidence [obtained here by police inducement] on the ground that it was obtained by improper or unfair means. The court is not concerned with how it was obtained.") (Lord Diplock) [Lord Diplock is considered to be one of England's greatest jurisprudential thinkers in the 20th Century.]; see Kersi B. Shroff and Stephen F. Clarke, Admissibility of Illegally Obtained Evidence: A Comparative Analysis of the Laws of England, Scotland, Ireland, Canada, Australia, and New Zealand, Library of Congress Law Library, American–British Law Division 7–16 (1981) (discussing issue of admissibility of illegally obtained evidence in England and noting that, in cases in which issue has been "directly presented," the courts "have virtually always ruled in favor of admissibility"—at 7).

In 1984, the United Kingdom attempted by legislation to clarify some of the uncertainty regarding the proper scope of the trial judge's discretion in admitting unlawfully obtained evidence. See Police and Criminal Evidence Act 1984 § 78, Exclusion of unfair evidence, Notes, Vol. 17, at 236 (Halsbury's Statutes 4th ed.1999 reissue). Section 78(1) provides:

> In any proceedings the court may refuse to allow evidence on which the prosecution proposes to rely to be given if it appears to the court that, having regard to all the circumstances, including the circumstances in which the evidence was obtained, the admission of the evidence would have such an adverse effect on the fairness of the proceedings that the court ought not to admit it. § 78(1).

In the cases following passage of § 78, there is still a trend toward admission of unlawfully obtained evidence. See R. v. Khan (Sultan) [1996] 3 All ER 289, 302 (H.L.) (dismissing appeal on grounds that unlawful use of surveillance devices did not render evidence inadmissible (Lord Nolan) and that trial judge's discretion had to be exercised according to whether admission of evidence would render trial unfair (Lord Nicholls of Birkenhead)). The fact that evidence was obtained unlawfully does not necessarily mean that it had an adverse effect on the trial. E.g., R. v. Chalkley [1998] Q.B. 848, 874, 876 (C.A.) (holding that unlawful or oppressive police conduct does not "automatically" require exclusion of evidence under § 78, and dismissing appeal on ground that admission of evidence obtained by audio surveillance was fair with regard to all circumstances).

GIERKE, Judge (concurring in the result):

There are two separate issues of standing involved in this case. The first issue pertains to appellant's standing to assert a violation of his wife's rights. The second issue pertains to appellant's standing to assert that the illegal subpoena adversely affected the reliability of the evidence or fairness of his trial. In my view, appellant's lack of standing with respect to the first issue does not deprive him of standing with respect to the second issue. *See United States v. Golston*, 53 MJ 61, 64 n. 1 (2000).

In any event, we need not decide whether the military judge should have suppressed Mrs. Johnson's Article 32 testimony, for two reasons: (1) the issue is moot, and (2) it was waived. The issue is moot because Mrs. Johnson's Article 32 testimony was never admitted as a prosecution exhibit. *See United States v. Napoleon*, 46 MJ 279, 281, *cert. denied*, 522 U.S. 953, 118 S.Ct. 375, 139 L.Ed.2d 292 (1997). The issue was waived because Mrs. Johnson's Article 32 testimony was used only to refresh her recollection and to impeach her, and defense counsel did not object to use of the Article 32 testimony for these purposes. *See* Mil.R.Evid. 103(a), Manual for Courts–Martial, United States (1995 ed.).* Because the Article 32 testimony was cumulative to other impeachment evidence, such as Mrs. Johnson's two statements to the CID, I am satisfied that there was no plain error. *See* Mil.R.Evid. 103(d); *United States v. Powell*, 49 MJ 460 (1998).

---

* The 1998 version of cited provisions is unchanged.